Brent E. Johnson, 7558
James L. Barnett, 7462
HOLLAND & HART LLP
60 E. South Temple, Suite 2000
Salt Lake City, Utah 84111-1031
(801) 595-7800
Facsimile: (801) 364-9124
*Attorneys for Continental Pipe Manufacturing Co., Inc.*

RECEIVED CLERK
**FILED**
2005 JUL -1 P 7: 43

U.S. DISTRICT COURT
DISTRICT OF UTAH

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONTINENTAL PIPE MANUFACTURING CO., INC., <br><br> Plaintiff, <br><br> vs. <br><br><br> PACIFIC ROLLER DIE CO., INC., <br><br> Defendant. | **COMPLAINT AND** <br><br> **JURY DEMAND** <br><br><br> Judge J. Thomas Greene <br> DECK TYPE: Civil <br> DATE STAMP: 07/05/2005 @ 09:42:21 <br> CASE NUMBER: 2:05CV00551 JTG |

Continental Pipe Manufacturing Co., Inc. ("Continental") complains against

Pacific Roller Die Co., Inc. ("PRD") as follows:

### PARTIES

1. Continental Pipe is a Wyoming corporation with its principal place of

business in Pleasant Grove, Utah.

2. PRD is a California corporation with its principal place of business in

Hayward, California.

## JURISDICTION AND VENUE

3.  This court has jurisdiction pursuant to 28 U.S.C. § 1332.

4.  The parties in this action are diverse and the amount in controversy exceeds $75,000.

5.  Venue is proper pursuant to 28 U.S.C. § 1391(a).

## GENERAL ALLEGATIONS

6.  On or about November 9, 2001, Continental contracted to purchase an Online Ultra-Sonic Testing Machine ("UT machine") from PRD for $185,000.00.

7.  The UT machine was purchased to test the integrity of pipe welds in steel pipe manufactured by Continental for the Lakewood Pipeline Phase III Project (the "Project").

8.  Barnard Construction Company, Inc. ("Barnard") contracted with the City of Boulder, Colorado ("the City") to build the Project, and Continental subcontracted with Barnard to manufacture and supply pipe for the Project.

9.  The Project required some of the pipe to be tested with an ultra-sonic testing machine in order to assure that the welds complied with Project specifications.

10.  Continental purchased the UT machine from PRD to test the pipe as required by the Project and to ensure that the pipe complied with Project specifications.

11.  Continental explained to PRD and PRD was aware that the purpose of the UT machine was to ensure that the pipe welds complied with Project specifications.

12.  PRD told Continental that the UT machine was capable of testing pipe welds to ensure that they complied with Project specifications.

13.  In or around April 2001, PRD sent a complete proposal which stated that the "system is designed for on-line inspection of the spiral-welded pipes" and the UT machine "ensures that the sources of the faults in the welding process can be recognized immediately after welding and removed quickly."

14.  The UT machine was delivered to Continental in or around December 2001.

15.  As a part of the purchase, agreement PRD agreed to train Continental's employees on how to use the UT machine including, but not limited to, installation, calibration and operation.

16.  Continental relied on PRD to train Continental's employees on the use of the UT machine including, but not limited to, installation, calibration and operation, and PRD knew that Continental was relying on PRD's expertise.

17.  During the supervision and training process, PRD represented, among other things, that the training supplied to Continental employees, including installation, calibration and operation of the UT machine, was sufficient and adequate to achieve accurate testing results and to ensure that the pipe welds complied with Project specifications.

18.  Relying upon PRD's representations about the capabilities of the UT machine and PRD's representations regarding proper training, Continental manufactured all of the pipe required for the Project using the UT machine to test the welds in the pipe.

19.  Whenever the UT machine indicated that the pipe had a possible flaw in a weld, Continental manually verified the existence of the flaw indicated by the UT machine and repaired the weld if necessary.

20.  Relying on the testing results, Continental shipped the pipe to Barnard, which pipe Barnard installed into the Project.

21.  In or around August 2002, the City notified Barnard and Continental that the City believed that welds in some of the pipe manufactured by Continental and tested with the UT machine did not meet Project specifications.

22.  As a result of the allegedly defective welds, the City's project engineering firm, ECI, visited Continental in late August 2002 to observe, among other things, how Continental was using the UT machine.

23.  On or about October 30, 2002, ECI notified Barnard of testing anomalies from Continental's UT machine.  ECI was concerned that the UT machine had not been correctly calibrated and indicated that "these test record anomalies would possibly indicate that the tests may not be accurately recording the integrity of the welds."

24.  As a result of ECI's concerns over the functionality of the UT machine, the City refused to allow Barnard to install any more pipe that had been manufactured by Continental.  The City also notified Barnard that it might reject the pipe that had already been installed into the pipeline if the welds contained flaws.

25.  After ECI inspected Continental's UT machine a second time in late November 2002, ECI concluded that Continental's UT machine "is not providing test results that can be relied upon to determine if the pipe welds meet the contract specifications."

26.  In addition, further investigation by ECI and Intermountain Testing Company ("ITC") revealed that the UT machine was operating inaccurately and that

PRD had not trained Continental's employees sufficiently or adequately with regard to proper calibration and operation of the UT machine.

27. Based on the investigations, ECI and ITC concluded that the City could not rely on any of the pipe-weld testing that Continental had performed using the UT machine purchased from PRD.

28. In its own subsequent investigation into the allegedly defective welds and miscalibration of the UT machine, Continental discovered that the UT machine was not capable of determining whether welds complied with any of the Project specifications.

29. PRD failed to disclose to Continental at any time the limitations of the UT machine to Continental.

30. PRD failed to disclose to Continental at any time that the training supplied to Continental's employees, including but not limited to, installation, calibration and operation of the machine, was inadequate and insufficient.

31. PRD's acts and omissions were willful, malicious, intentionally fraudulent and/or manifested a knowing and reckless indifference toward, and a disregard of, the Continental's rights.

32. As a result of PRD's inadequate training of Continental's employees and the limitations of the UT machine, the City rejected all of the pipe that had not been installed into the Project.

33. As a result of the City's rejection, Continental was required to tender additional pipe at its own expense to complete the Project. Continental remanufactured some of the pipe and purchased other pipe from another pipe manufacturer.

34.  The City accepted the remanufactured pipe and the newly purchased pipe, but it remained unhappy with the pipe that had already been installed into the pipeline.

35.  The City has withheld payment to Barnard for its work on the Project as a result of, among other things, the allegedly noncompliant pipe.  Barnard has also withheld payment from Continental for the pipe it supplied to the Project.

36.  Both the City and Barnard have pending actions against Continental alleging damages resulting from the allegedly noncompliant pipe manufactured by Continental using the UT machine purchased from PRD.

## FIRST CLAIM FOR RELIEF

### (Breach of Express Warranty)

37.  Continental hereby realleges and incorporates by reference each of the paragraphs above.

38.  PRD expressly warranted and promised to Continental that the UT machine was capable of testing pipe welds to ensure compliance with Project specifications.

39.  PRD expressly warranted and promised to Continental that the training, including but not limited to installation, calibration and operation of the UT machine, would be adequate and sufficient to ensure that the pipe welds would comply with Project specifications.

40.  Continental relied upon the warranties and promises made by PRD regarding the abilities of the UT machine and the accompanying training.

41.  The UT machine delivered to Continental by PRD failed to conform and operate as expressly warranted and promised.

42.   The training supplied to Continental by PRD failed to conform as expressly warranted and promised.

43.   As a direct and proximate result of PRD's breach of the express warranties that it made to Continental, Continental has been damaged in an amount to be proven at trial and is entitled to recover damages.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Warranty of Merchantability)

44.   Continental hereby realleges and incorporates by reference each of the paragraphs above.

45.   PRD is a merchant in, or otherwise holds itself out as having knowledge and/or skill peculiar to, ultra-sonic testing equipment of the kind supplied to Continental.

46.   At the time of sale, the UT machine supplied to Continental by PRD was not fit for the ordinary purposes for which it was intended, nor was the UT machine fit for the reasonably foreseeable purposes for which Continental used the machine.

47.   Continental was reasonably expected to use the UT machine to test the integrity of welds in pipe that it manufactured.

48.   As a direct and proximate result of PRD's breach of an implied warranty of merchantability, Continental has been injured in an amount to be proven at trial and is entitled to recover those damages.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

49.   Continental hereby realleges and incorporates by reference each of the paragraphs above.

50.  PRD had reason to know that Continental intended to use the UT machine to ensure that the pipe welds complied with Project specifications.

51.  PRD had reason to know that Continental was relying on PRD's skill and/or judgment to furnish a suitable UT machine, which would ensure that pipe welds complied with Project specifications.

52.  Continental in fact relied on PRD's skill and/or judgment to furnish such a machine.

53.  The UT machine sold to Continental by PRD was not fit for the particular purpose for which it was purchased.

54.  As a direct and proximate result of PRD's breach of an implied warranty of fitness for a particular purpose, Continental has been injured in an amount to be proven at trial and is entitled to recover damages.

### FOURTH CLAIM FOR RELIEF

(Fraud and Misrepresentation)

55.   Continental hereby realleges and incorporates by reference each of the paragraphs above.

56.  PRD represented to Continental that the UT machine was capable of testing the integrity of pipe welds to ensure that they complied with Project specifications, which representation was relating to a presently existing material fact that was false at the time it was made.

57.  PRD represented to Continental that PRD would train Continental's employees on how to use the UT machine, including but not limited to, installation, calibration and operation, such that the pipe welds would comply with Project

specifications, which representation was relating to a presently existing material fact that was false at the time it was made.

58.  PRD knew that the representations were false and/or recklessly made the representations knowing it had insufficient knowledge upon which to base such representations.   Such acts and/or omissions were willful, malicious, intentionally fraudulent and/or manifested a knowing and reckless indifference toward, and a disregard of, the Continental's rights.

59.  PRD made the representations for the purpose of inducing Continental to rely on the representations and to purchase the UT machine and accompanying training.

60.  Continental, in fact, relied on the representations acting reasonably and in ignorance of their falsity and purchased the UT machine and accompanying training from PRD.

61.  As a direct and proximate result of PRD's fraud and misrepresentations, Continental has been injured in an amount to be proven at trial and is entitled to recover damages.

### FIFTH CLAIM FOR RELIEF

(Negligent Misrepresentation)

62.  Continental hereby realleges and incorporates by reference each of the paragraphs above.

63.  PRD carelessly and/or negligently misrepresented to Continental that the the UT machine was capable of testing pipe welds to ensure that they complied with Project specifications.

64.  PRD carelessly and/or negligently misrepresented to Continental that PRD would train Continental employees on how to use the UT machine, including but not

limited to, installation, calibration and operation, to ensure that the pipe welds complied with Project specifications. Such acts and/or omissions were willful, malicious, intentionally fraudulent and/or manifested a knowing and reckless indifference toward, and a disregard of, the Continental's rights.

65. These representations were misrepresentations of material facts.

66. PRD was in a superior position to know the material facts regarding the UT machine and PRD's intent and/or ability to train Continental's employees.

67. PRD should have reasonably foreseen that Continental was likely to rely on PRD's misrepresentations.

68. Continental reasonably relied on PRD's misrepresentations.

69. As a direct and proximate result of PRD's negligent misrepresentations, Continental has been injured in an amount to be proven at trial and is entitled to recover damages.

### SIXTH CLAIM FOR RELIEF

(Violation of the Utah Consumer Sales Practice Act)

70. Continental hereby realleges and incorporates by reference each of the paragraphs above.

71. PRD is a "supplier" under UTAH CODE ANN. § 13-11-3(6).

72. Continental is a "person" under UTAH CODE ANN. § 13-11-3(5).

73. Continental's purchase of the UT machine from PRD is a "consumer transaction" under UTAH CODE ANN. § 13-11-3(2).

74. PRD's agreement to train Continental's employees to operate the UT machine is a "consumer transaction" under UTAH CODE ANN. § 13-11-3(2).

75.   PRD has engaged in deceptive trade practices under UTAH CODE ANN. § 13-11-4(2)(a) because, in the course of its business, PRD knowingly or intentionally represented that the UT machine had performance characteristics, uses, or benefits, which it did not have.

76.   PRD has engaged in deceptive trade practices under UTAH CODE ANN. § 13-11-4(2)(b) because, in the course of its business, PRD knowingly or intentionally represented that its UT machine was of a particular standard, quality, or grade, which it was not.

77.   PRD has engaged in deceptive trade practices under UTAH CODE ANN. § 13-11-4(2)(b) because, in the course of its business, PRD knowingly or intentionally represented that its training of Continental's employees was of a particular standard, quality, or grade, which it was not.

78.   PRD has engaged in deceptive trade practices under UTAH CODE ANN. § 13-11-4(2)(e) because, in the course of its business, PRD knowingly or intentionally represented that both the UT machine and PRD's training of Continental's employees were supplied in accordance with a previous representations, which they were not.

79.   As a direct and proximate result of PRD's deceptive trade practices under the Utah Consumer Sales Practices Act, Continental has suffered actual damages in an amount to be proven at trial and is entitled to recover those damages, as well as, costs and attorney fees against PRD for PRD's deceptive trade practices.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Contract)

80.   Continental hereby realleges and incorporates by reference each of the paragraphs above.

81.   Continental had a contract with PRD to purchase the UT machine and accompanying training.

82.   Continental performed its obligations under the contract by tendering full payment of the contract price to PRD.

83.   As detailed above, PRD breached the terms of its contract with Continental by failing to provide goods and services as promised in the contract, including the failure to tender a UT machine capable of ensuring that pipe welds were manufactured according Project specifications and by failing to adequately train Continental's employees how to use the UT in order to ensure that the pipe welds complied with Project specifications.

84.   As a direct and proximate result of PRD's breach of contract, Continental has been damaged in an amount to be at trial and is entitled to recover damages.

### EIGHTH CLAIM FOR RELIEF

(Negligence)

85.   Continental hereby realleges and incorporates by reference each of the paragraphs above.

86.   PRD owed Continental a duty of reasonable care in the sale and distribution of its products and owed Continental a duty of reasonable care in training Continental's employees to use the UT machine including, but not limited to, installation, calibration and operation.

87.   PRD breached its duty of reasonable care when it tendered a UT machine that was not capable of performing the desired testing and/or was defective.  PRD also breached its duty of reasonable care to Continental when it failed to adequately train Continental's employees.

88.   As a direct and proximate result of PRD's negligence Continental has been damaged in an amount to be proven at trial and Continental is entitled to recover damages resulting from PRD's negligence.

### NINTH CLAIM FOR RELIEF

#### (Equitable Indemnity)

89.   Continental hereby realleges and incorporates by reference each of the paragraphs above.

90.   Continental tendered pipe to Barnard manufactured using the UT machine purchased from PRD, which pipe the City claims does not comply with Project specifications.

91.   Barnard installed this allegedly noncompliant pipe into approximately half of the Project and the City rejected the remainder of the allegedly noncompliant pipe.

92.   Continental acted promptly to mitigate damages by purchasing and remanufacturing the pipe for the Project at Continental's own expense.

93.   The City and Barnard are currently seeking to recover damages from Continental.

94.   In so far as it may be adjudged that Continental is liable to the City and/or Barnard, such liability is the direct and proximate result of the breach of express and implied warranties, fraud and misrepresentations, violation of the Utah Consumer Sales Practice Act, breach of contract, and negligence on the part of PRD.  Therefore, Continental is entitled to indemnification from PRD for any and all expenses and damages for which Continental may be held liable to Barnard and/or the City.

### JURY DEMAND

Continental demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Continental Pipe Manufacturing Co., Inc. requests that judgment be entered in its favor and against PRD as follows:

1.  For actual damages in an amount to be proved at trial;

2.  For consequential damages in an amount to be proven at trial;

3.  For equitable indemnification in an amount to be proven at trial;

4.  For prejudgment and postjudgment interest as provided by law;

5.  For punitive damages as a result of PRD's malicious, willful, intentionally fraudulent and recklessly indifferent conduct.

6.  For Continental's costs and attorneys' fees as provided in UTAH CODE ANN § 13-11-19.

7.  For such other and further relief as the Court deems just and proper.


DATED: July 1, 2005.


                                        _____
                                        Brent E. Johnson
                                        James L. Barnett
                                        Holland & Hart LLP
                                        **ATTORNEYS FOR PLAINTIFF**


Plaintiff's Address:

430 N 600 W
Pleasant Grove, UT 84062

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Continental Pipe Manufacturing Co., Inc. | Pacific Roller Die Co., Inc. |

**(b)**  County of Residence of First Listed Plaintiff   Utah
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Brent E. Johnson, James L. Barnett/Holland & Hart LLP/60 E. South
Temple, #2000/SLC, UT 84111/801-595-7800

Attorneys (If Known)

*(handwritten stamp: RECEIVED CLERK  FILED  2005 JUL -1 P 7:43  U.S. DISTRICT COURT  DISTRICT OF UTAH)*

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☐ 3   Federal Question
  (U.S. Government Not a Party)
- ☒ 4   Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. ¶ 1332

Brief description of cause:
Claim for breach of contract, warranties, fraud and misrepresentation

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   7/1/05

SIGNATURE OF ATTORNEY OF RECORD   *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____

```
Judge J. Thomas Greene
DECK TYPE: Civil
DATE STAMP: 07/05/2005 @ 09:42:21
CASE NUMBER:  2:05CV00551  JTG
```